NORMAN I. GALLAGHER

*vs.*

AROOSTOOK FEDERATION OF FARMERS.

Aroostook.      Opinion, March 10, 1938.

*Pattangall, Williamson & Birkenwald,*
*Pendleton & Rogers,* for plaintiff.
*O. L. Keyes,*
*David Solman,* for defendant.

SITTING: DUNN, C. J., STURGIS, THAXTER, HUDSON, MANSER, JJ.

MANSER, J. The case comes up on appeal from decree of a single Justice sitting in equity. The bill sets out a chattel mortgage given by the plaintiff to the defendant on May 7, 1936 for $7193.00 and accruing indebtedness, upon farm equipment and upon a crop of potatoes to be raised during the then coming season; the taking possession by the mortgagee of the potato crop as harvested and before any default against the protest of the mortgagor; a charge of $922.50 for storage of potatoes by the mortgagee and a denial of liability therefor; foreclosure proceedings begun on December 2, 1936; written agreement to extend the period of redemption; written agreements authorizing and requiring the mortgagee to sell at specific times a sufficient quantity of potatoes to pay the amount due on the mortgage; failure of the mortgagee to sell the potatoes in accordance with such authorization and direction; allegation that, if such sale had been made, the mortgage would have been fully satisfied; further allegation that the mortgagor and mortgagee could not agree as to the amount due and that the rights of the parties could be determined only upon an accounting.

The answer of the defendant admits taking possession of the potatoes as alleged, and that their value at the time was sufficient to pay the indebtedness under the mortgage, but asserts the unwillingness of the plaintiff as mortgagor to agree to a sale at the prices then prevailing as excuse for failure to make such sale; assertion of the right to reimbursement for storage and assent to the necessity of an accounting and the plaintiff's prayer for the same.

The Court is confronted in the first instance with a question as to whether the case as presented is one in which it was proper to take jurisdiction. The specific grant of equity powers given in R. S., Chap. 91, Sec. 36, includes:

"For the foreclosure of mortgages of real and personal property, and for redemption of estates mortgaged."

By a line of decisions, however, it has been pointed out that the trend of legislation plainly showed it was not intended to confer equity jurisdiction on the subject except in particular cases where the statutory methods were insufficient to give complete remedy. *Rockland* v. *Water Co.*, 86 Me., 55 at 59, 29 A., 935; *Chase* v.

*Palmer*, 25 Me., 341; *Titcomb* v. *McAllister*, 77 Me., 357; *Loggie* v. *Chandler*, 95 Me., 220, 49 A., 1059, 1062; *Drake* v. *Nickerson*, 123 Me., 11, 121 A., 86; *Harvey* v. *Anacone*, 134 Me., 245, 184 A., 889.

In the instant case, however, there is a charge of failure on the part of the defendant to comply with the terms of separate written agreements concerning the subject matter of the mortgage, dispute between the parties as to liability for storage expense, the fact that on March 27, 1937 the mortgage had not been actually paid in cash, but that if the stock remaining in the possession of the mortgagee had been sold as required by the agreement, more than enough to liquidate the indebtedness would have been realized.

The defendant was more than a mere agent. Its relationship was that of a factor, which requires great care, attention and fidelity. *Greely* v. *Bartlett*, 1 Me., 172 at 178.

> "To warrant a court of equity in assuming jurisdiction where fiduciary relations exist it must appear that an accounting is necessary to determine the amount due, and that defendant has been intrusted with plaintiff's property and is bound to show his dealings therewith; but it is not essential that the accounts be mutual or complicated, or that discovery be necessary or sought; and the fact that there is an adequate remedy at law, as by an action for damages for breach of trust, or by process at law for the examination of books, has been held not to deprive equity of jurisdiction." 1 C. J. S., Accounting, Sec. 19.

Thus, while our Court in *Loggie* v. *Chandler*, supra, stated the principle that it "would not entertain a bill in equity to redeem from a chattel mortgage unless facts are stated making it apparent that the mode specifically provided by the statute will not fully protect the mortgagor's rights" yet, as it pointed out, "of course there may be in some case peculiar facts and circumstances in the nature of the property, — the character of the condition, — the conduct of the mortgagee, or perhaps in the accidents or misfortunes of the mortgagor, or in other respects, that would render it necessary for a court of equity to intervene to protect the con-

tractual or statutory rights of the mortgagor or his assigns. Such facts and circumstances may give to the court jurisdiction in equity."

Although willingness of both parties to the bill to acknowledge jurisdiction is not the criterion, the case presented here is one in which equity should not hesitate to give its aid. *Webb* v. *Fuller,* 77 Me., 568, 1 A., 737 ; *McKim* v. *Odom,* 12 Me., 94 at 106–7.

The evidence clearly shows that both parties intended and expected the potato crop to be sold and the proceeds applied in liquidation of the mortgage. 2000 barrels were sold and $5750.00 received therefor by the mortgagee.

In the mortgage itself is a provision that upon default the mortgagee shall have the right to take possession and sell the mortgaged property. Such power of sale has been upheld by our Court in *Consolidated Rendering Co.* v. *Stewart,* 132 Me., 139, 168 A., 100.

On February 25, 1937 the mortgagor constituted the mortgagee "his sole selling agent with full and unrestricted authority to sell, transfer and convey title to said potatoes until said Aroostook Federation of Farmers has received the full amount due it from said Norman I. Gallagher." Definite quantities were to be sold before prescribed dates, and the balance remaining not later than March 27, 1937.

The presiding Justice found that no oral modification was made by the parties in the terms of the specific instructions and authority to sell. He further found that the defendant must be charged with the value of the stock on hand March 27, 1937 and that it was the duty of the defendant to sell the stock, a perishable crop, at the market price within a reasonable time thereafter, fixing that time as April 2. The market price during this period was ascertained and made a part of the record, and the court found that the sum which should have been realized from the stock, added to the amount already received from that sold, liquidated the mortgage in full and left due to the plaintiff $1884.39. In reaching this result, the presiding Justice disallowed the charge for storage.

The potatoes remaining on hand were sold by the mortgagee at different times up to June 9, 1937 and the actual amount received

therefore is not in dispute. If the storage charge had been allowed, the total amount actually received from sale of the potatoes would leave remaining due to the mortgagee the sum of $1370.00

The parties are in agreement as to the possession by the defendant of the potatoes and its duty and authority to sell and account. The dispute between them as to the period during which such sale should be made was one of fact and the record amply supports the finding upon this point. Neither is it denied that the amount for which the crop should have been sold within the required period was correctly determined.

There remains the question of whether or not the storage charge was justifiable. The finding with regard to this item was as follows: "storage claimed is not allowed, no agreement on the part of the complainant being proved."

The charges made by the defendant for storage paid were as follows: A. & P. warehouse 4550 bbls. @ $.15 per bbl., $682.50, C. P. warehouse 1600 bbls. @ $.15 per bbl., $240.00. It may be inferred that these charges are for the use of bins for the season and are not subject to fluctuation dependent upon the time when storage begins or ends. This, however, is not found as a fact. The potatoes were placed in storage between September 15 and October 1. About 2500 bbls. were removed on or before March 27. The plaintiff stipulated in his mortgage that after default the defendant was authorized to take possession and sell, reimbursing itself for all expenses in so doing. The mortgage was in default on December 2 when foreclosure proceedings were instituted. There can be no denial of the right to charge for storage from that time.

A mortgagee of chattels is entitled to possession before default in the absence of any express or implied stipulation to the contrary. Such stipulation, however, need not be in writing. It can be proved by parol. *Pierce* v. *Stevens*, 30 Me., 184; *Ramsdell* v. *Tewksbury*, 73 Me., 197; *Jones* v. *Cobb*, 84 Me., 153, 24 A., 798; *Gilpatrick* v. *Chamberlain*, 121 Me., 561, 118 A., 481.

In the present case sufficient evidence exists to warrant the conclusion that there was implicit in the situation an understanding that the mortgagor should retain possession until default. This comes from similar dealings between the parties for the preceding four years when possession was retained by the mortgagor, his rec-

ognized adequate facilities for storage for which he was paying rent, and the statement of the treasurer of the defendant company that no change in arrangements was indicated to the mortgagor and "so fas as he knew in the spring, he probably had great reason to believe he would store his potatoes in his own house." The defendant being entitled to possession from December 2, and to all reasonable and actual expenses in caring for the potatoes from that time, the proper amount for storage must be allowed. As it does not appear of record what such amount would be, it must be determined by the sitting Justice. Upon this point only the entry must be

*Appeal sustained.*
*Decree below modified accordingly.*